FILED
2023 DEC 5 PM 12:28
CLERK
U.S. DISTRICT COURT

TRINA A. HIGGINS, United States Attorney (#7349)
CHRISTOPHER BURTON, Assistant United States Attorney (NV #12940)
Attorneys for the United States
20 North Main Street, Suite 208
St. George, Utah 84770
Telephone: (435) 634-4263
Christopher.Burton4@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF A RESIDENCE LOCATED AT 1050 W RED HILLS PKWY UNIT 22, WASHINGTON, UTAH 84780 | FILED UNDER SEAL<br><br>AFFIDAVIT IN SUPPORT OF SEARCH WARRANT<br><br>Case No. 4:23-mj-00159-PK |
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF A GRAY HYUNDAI ELANTRA GT HATCHBACK, BEARING UTAH LICENSE PLATE 3E9CW, | FILED UNDER SEAL<br><br>AFFIDAVIT IN SUPPORT OF SEARCH WARRANT<br><br>Case No. 4:23-mj-00160-PK |
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF A BLACK CHEVROLET | FILED UNDER SEAL<br><br>AFFIDAVIT IN SUPPORT OF SEARCH WARRANT |

1

| BLAZER, BEARING UTAH LICENSE PLATE 9E5CV, | Case No. 4:23-mj-00161-PK |
|---|---|

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I BRETT GIBSON, Detective with the Washington County Drug Task Force, being duly sworn, state:

## I. AFFIANT BACKGROUND

1. I am a Detective of the Washington County Drug Task Force (WCDTF) and have been employed with the Washington City Police Department since March 3, 2014. I graduated from the Utah Police Officer Standards and Training (POST) academy at which time I was trained in multiple areas of law enforcement for investigation, impairment recognition, and other law enforcement related duties.

2. I graduated from the University of Phoenix with a Bachelor's Degree in Criminal Justice Administration. I have completed the Basic Drug Investigation course in Denver, Colorado in August 2019. This training included drug identification, drug related investigative techniques, interview and interrogation training, preparation and execution of search warrants, tactical application of drug enforcement, surveillance and electronic monitoring techniques, money laundering investigations, and asset identification and forfeiture.

3. During my career, I have investigated numerous types of criminal offenses, including those involved in the current investigation. These investigations have included possession with intent to distribute a controlled substance, theft, burglary, fraud, assault,

2

sexual assault, domestic violence, drug related incidents, DUI, criminal mischief and others, with successful prosecution.

4. By virtue of my training and experience, and my interaction with other experienced officers who conduct drug investigations, I am familiar with the methods used by drug traffickers to: (1) import, transport, store, safeguard, and distribute drugs; (2) collect, transport, store, safeguard, remit, and/or launder drug proceeds; (3) obtain and utilize telephones, computers, and other devices in order to communicate with each other, as well as the jargon and/or codes commonly used when they refer to drugs and/or drug proceeds. I also have examined documentation of various methods in which illicit drugs are smuggled, transported, and distributed. I have had discussions with other law enforcement officers and cooperating individuals about the packaging and preparation of narcotics, methods of operation, and security measures that are often employed by narcotics traffickers. As a result of my experience, I have become familiar with the day-to-day operations and the various tools, methods, trends, paraphernalia and related articles utilized by various traffickers in their efforts to manufacture, possess, import, conceal, package, use, and distribute controlled substances.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other detectives and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience, including experience obtained through my participation in this investigation, and based upon my consultation with other

3

experienced law enforcement officers and detectives, I know that drug traffickers frequently use their residence to possess, conceal, package, use, and distribute illegal narcotics. Based on my training and experience, including experience obtained through my participation in this investigation, and based upon my consultation with other experienced law enforcement officers and detectives, I know that drug traffickers frequently use their vehicles to likewise possess, conceal, transport, use, and distribute illegal narcotics.

## SOURCES OF INFORMATION

7. I have obtained the facts set forth in this affidavit through my personal participation in an investigative described below; from records, documents, and other evidence obtained during this investigation; from confidential informant who are knowledgeable about the subject(s) of this investigation; and from my personal work experiences and areas I have received training in. During this investigation, investigators have made use of numerous investigative techniques, including but not limited to, conducting surveillance, controlled purchases of controlled purchases of illegal drugs, etc. Event times included in this affidavit are approximate.

## PURPOSE OF AFFIDAVIT

8. Upon information and belief, the residence located at 1050 W Red Hills Pkwy Unit 22, Washington, Utah 84780 ("**Subject Residence**"); a gray Hyundai Elantra Gt Hatchback bearing Utah license plate 3E9CW ("**Subject Vehicle 1**"); and a black Chevrolet Blazer bearing Utah license plate 9E5CV ("**Subject Vehicle 2**") are presently being used in furtherance of offenses under 21 U.S.C. § 841(a)(1) (distribution of, and possession with intent to distribute controlled substances) and 21 U.S.C § 846 (conspiracy

4

to distribute, and to possess with intent to distribute, controlled substances). These offenses involve Adam J. SMITH and others.

9. This affidavit is being submitted in support of my request for the insurance of a search warrant for the **Subject Residence** and **Subject Vehicles**.

10. According to a check of the Utah Criminal Justice Information System (UCJIS), SMITH's residence as listed on his Utah Driver License is 1050 W Red Hills Pkwy Unit 22, Washington, Utah 84780. The property to be searched is further described in Attachment A.

11. This affidavit establishes probable cause to believe evidence of controlled substance distribution, in violation of 21 U.S.C § 841(a)(1) (distribution of, and possession with intent to distribute controlled substances) and 21 U.S.C § 846 (conspiracy to distribute, and to possess with intent to distribute, controlled substances), will be found at the **Subject Residence** and in the **Subject Vehicles**. There is probable cause to believe Adam J. Smith committed the offense of distribution of a controlled substance and possession of a controlled substance with intent to distribute, in violation of 21 U.S.C § 841(a)(1) and conspired to commit the same offenses in violation of 21 U.S.C § 846 (conspiracy to distribute, and to possess with intent to distribute, controlled substances), which items are more specifically described in Attachment B.

12. As described herein, there is probable cause to believe SMITH has committed and is continuing to commit violation of the above referenced statutes and that contained within or upon the person of the above-described items/person, there exists evidence, fruits and instrumentalities of these violations.

13.     For the listed and described items, authority to search extends to all containers, compartments, or safes located on or in the listed properties, whether locked or not, where the items described herein could be, as well as all persons found at the location to be searched. Suspected illegal activity such as the offenses being investigated occurs at different hours of the day and night and in my training and experience, firearms are often involved. I am therefore requesting authority to execute the requested warrant at any time in the day or night so the cover of darkness may be used for the safety of those serving the warrant and prevent the destruction of potential evidence.

14.     Since the affidavit is being submitted for the limited purpose of obtaining authority to search the above listed items/person, I have not included every fact known to me concerning the investigation. Rather, I have set forth only the facts that I believe are necessary for the fair determination of probable cause and to show that there is sufficient factual basis for the requested orders.

### III.    PROBABLE CAUSE

15.     Within the last ▮▮▮ I have conducted ▮▮▮ controlled purchases of illegal narcotics from SMITH utilizing a Confidential Informant ("the CI").[1] Three of which took place at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮. I therefore reasonably believe SMITH uses his residence to possess, conceal,



[1] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

package, use, and distribute illegal narcotics to facilitate both of the transactions. Two of the controlled purchases involved the purchase of ▆▆▆▆▆▆ and one involved the purchase of ▆▆▆▆▆▆. Prior to all of those controlled purchases, the CI made contact with the WCDTF detectives in order to provide details for the purchases including drug type and purchase costs. The CI informed detectives that SMITH was able to provide the drugs noted above.

16. For the first controlled purchase ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ The controlled purchase was arranged with SMITH ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. The CI made arrangements to meet SMITH ▆▆▆▆▆▆▆▆▆▆ and the location is consistent with what was later observed by detectives during surveillance.

17. In preparation for this controlled purchase, I utilized the procedures we regularly follow for these types of operations; specifically, I utilized several other members of the WCDTF to establish surveillance positions at the intended transaction location. I also utilized two other members of the WCDTF to partner with me in "handling" the CI during the operation. We ensured that the CI was free of any contraband, and the money used for the drug purchase was recorded and came from the WCDTF. Furthermore, we ensured that the CI met with no other individuals during this transaction. We also utilized an audio/transmitting device during the transaction so that we could monitor what was happening in real time.

18. During this controlled purchase, detectives assigned to the surveillance team were able to observe the CI enter into ▓▓▓▓▓ where the CI later stated the transaction took place. After the controlled purchase, I observed the suspected ▓▓▓▓▓ that the CI confirmed they had purchased from SMITH. The suspected ▓▓▓▓▓ was not field tested at that time for officer safety reasons but appeared consistent with ▓▓▓▓▓ in my training and experience. The CI confirmed that ▓▓ received the ▓▓▓▓▓ that ▓▓ provided to detectives from SMITH while in the ▓▓▓▓▓ in exchange for the ▓▓▓▓▓ provided to the CI prior to the controlled buy and that SMITH refers to it as ▓▓▓▓▓.

19. During a second controlled purchase under my direction, the CI again ▓▓ ▓▓▓▓▓ make arrangements with SMITH to purchase suspected ▓▓▓▓▓. The arrangements were made for the controlled purchase of ▓▓▓▓▓. The CI made arrangements to meet SMITH at ▓▓▓▓▓ and the location is consistent with what was later observed by detectives during surveillance.

20. In preparation for this controlled purchase, I utilized the procedures we regularly follow for these types of operations, as described above. Following the conclusion of this controlled purchase, I observed the suspected ▓▓▓▓▓ that the CI purchased from SMITH. The CI positively identified SMITH as the person that sold them the ▓▓▓▓▓ and confirmed that the sale occurred inside the ▓▓▓▓▓. A sample of the ▓▓▓▓▓ that CI purchased from SMITH later tested

positive for the presence of ▉▉▉▉▉▉ in a field test. The total amount SMITH sold to the CI was ▉▉▉▉▉.

21.    For a third controlled purchase, the CI arranged for the purchase of ▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ per an agreement with SMITH. The controlled purchase was arranged with SMITH ▉▉▉▉▉▉▉▉ prior to the controlled purchase. The CI made arrangements to meet SMITH at ▉▉▉▉ ▉▉▉▉ and the location is consistent with what was later observed by detectives during surveillance.

22.    In preparation for this controlled purchase, I utilized the procedures we regularly follow for these types of operations; specifically, I utilized several other members of the WCDTF to establish surveillance positions at the intended transaction location. I also utilized two other members of the WCDTF to partner with me in "handling" the CI during the operation. We ensured that the CI was free of any contraband, and the money used for the drug purchase was recorded and came from the WCDTF. Furthermore, we ensured that the CI met with no other individuals during this transaction. We also utilized an audio/transmitting device during the transaction so that we could monitor what was happening in real time.

23.    During this controlled purchase, detectives assigned to the surveillance team were able to observe the CI enter into ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ which was where the CI later stated the transaction took place. After the controlled purchase, I observed the suspected ▉▉▉▉▉▉ that the CI confirmed they had purchased from SMITH. The suspected ▉▉▉▉▉▉▉ was not field tested for officer safety reasons but appeared

9

consistent with ▮▮▮ in my training and experience. The CI confirmed that ▮▮ received the ▮▮▮ that ▮ provided to detectives from SMITH while in ▮▮ ▮▮▮ in exchange for ▮▮▮ provided to the CI prior to the controlled buy and that SMITH refers to it as ▮▮.

24. During a post-buy interview with the CI after these controlled purchases, the CI stated SMITH had them ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

25. I am not aware of any information that would challenge the CI's reliability in this investigation. The CI believes that SMITH also distributes to other people in the Washington County, Utah area.

26. Over the course of the investigation, WCDTF members have conducted surveillance of the **Subject Residence** and repeatedly observed a Gray Hyundai Elantra Gt Hatchback, bearing Utah license plate 3E9CW, parked in the driveway (**Subject Vehicle 1**). Registration records show **Subject Vehicle 1** is currently registered to ▮▮▮ ▮▮ at the **Subject Residence**. WCDTF members have also observed SMITH driving **Subject Vehicle 1** ▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

27. During the same period of surveillance on the **Subject Residence**, WCDTF members observed a black Chevrolet Blazer, bearing Utah license plate 9E5CV, parked in the driveway (**Subject Vehicle 2**). Registration records for **Subject Vehicle 2** show it is currently registered to SMITH at the **Subject Residence**. ▮▮▮▮▮▮▮



. Using the same CI, WCDTF conducted a controlled purchase ▮▮▮▮▮ wherein the CI purchased ▮▮▮▮▮ from SMITH for ▮▮▮▮. Those ▮▮▮▮ that CI received from SMITH were subsequently field-tested and were positive for the presence of ▮▮▮▮.

28.     Based on my training and experience, I know that drug traffickers will utilize their residence and vehicles to possess, conceal, package, use and distribute illegal narcotics from.

**IV.     CONCLUSION AND REQUEST FOR DELAYED NOTICE**

29.     Based on the facts set forth in this affidavit, there is probable cause to believe evidence of violations of 21 U.S.C § 841(a)(1) (distribution of, and possession with intent to distribute controlled substances) and 21 U.S.C § 846 (conspiracy to distribute, and to possess with intent to distribute, controlled substances), will be found at the **Subject Residence** and in the **Subject Vehicles**. There is probable cause to believe that the **Subject Residence** and the **Subject Vehicles** are continuing to be used to facilitate drug trafficking, in violation of 21 U.S.C. § § 841(a)(1) and 846.

///

///

///

///

30. I request that the Court authorize execution of the warrant at any time of the day or night, owing to the potential need to locate the target outside of daytime hours.

RESPECTFULLY SUBMITTED this 13th day of September, 2023.

/s/ *Brett Gibson*
Brett Gibson, Detective
Washington County Drug Task Force

Subscribed and sworn before me this 13 day of September, 2023.

_____
JUDGE PAUL KOHLER
United States Magistrate Judge

## Attachment A-1
## DESCRIPTION OF RESIDENCE TO BE SEARCHED

The Subject Residence is located at 1050 W Red Hills Pkwy, Unit 22, Washington, Utah, 84780. The residence is a single-family dwelling made of cream-colored stucco with gray tile roofing. The front door of the residence faces North and the back of the residence faces South. The home resides in a private community and each residence is identified with a unit number. To the left of the front door is the number "22" in black lettering. There is a large window to the left of the front door and two smaller windows to the right of the front door. There is a single garage with a white garage door, at the front of the residence facing North.

Authority to search extends to all containers, compartments, or safes located on or in the Subject Residence, whether locked or not, where the items described in Attachment B could reasonably be located, as well as all for persons found at the Subject Residence.

## **Attachment A-2**
## **DESCRIPTION OF VEHICLE TO BE SEARCHED**

Subject Vehicle 1 is a gray Hyundai Elantra Gt Hatchback, bearing Utah license plate 3E9CW. It is currently registered to Eleanor Ann Davis at the address, 1050 W Red Hills Pkwy, Unit 22, Washington, Utah, 84780.

Authority to search extends to all containers, compartments, or safes located on or in the Subject Vehicle, whether locked or not, where the items described in Attachment B could reasonably be located, as well as all for persons found at the Subject Vehicle.

## Attachment A-3
## DESCRIPTION OF VEHICLE TO BE SEARCHED

Subject Vehicle 2 is a black Chevrolet Blazer, bearing Utah license plate 9E5CV. It is currently registered to Adam J Smith at the address, 1050 W Red Hills Pkwy, Unit 22, Washington, Utah, 84780.

Authority to search extends to all containers, compartments, or safes located on or in the Subject Vehicle, whether locked or not, where the items described in Attachment B could reasonably be located, as well as all for persons found at the Subject Vehicle.

## Attachment B
## Particular Things to be Seized

Evidence of the commission of, the fruits of, or property which has been used as the means of committing the offenses of possession with intent to distribute controlled substances, distribution of controlled substances, and conspiracy to do so, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

1. Any mixture or substance containing controlled substances, including but not limited to methamphetamine and Fentanyl, and any packaging material for such mixtures and substances.

2. Items used to package, store, and distribute controlled substances, such as plastic bags, cutting agents, scales, measuring equipment, and similar items.

3. Documents such as ledgers, receipts, notes, travel records, vehicle records, and similar items relating to the cultivations, acquisition, storage, transportation, and distribution of controlled substances.

4. Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, papers with phone number and names, and similar items.

5. Financial records that appear to show income, expenses, and large cash transactions, including bank records, safety deposit box records, credit and debit cards and related records, records, bills, receipts for personal property, tax returns, money wire or transfer records, purchase and sale records for gold and other valuables, and similar items, and registration information, ownership documents, or other evidence of ownership of

property (whether by individuals or business entities) including, but not limited to real property, vehicles, and personal property.

6. Any currency (including counterfeit currency) in an amount over $100 and any negotiable or other valuable instruments such as checks and money orders and other forms of financial remuneration, and gold, other precious metals, valuable jewelry and gems, evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

7. Safes and locked storage containers and the contents otherwise described in this Attachment.

8. Photographs and other physical images depicting controlled substances, assets derived from the distribution of controlled substances, or suspected sellers or buyers of controlled substances.

9. Deeds, contracts, escrow documents, mortgage documents, leases, rental agreements, and other evidence relating to the purchase, ownership, or control of the premises, and similar records of other property ownership, and other documents tending to establish occupancy and control of the premises such as utility bills, identification documents, and received mail showing an intended addressee.

10. Firearms and other weapons, and associated items such as ammunition and cases, that can be used to guard the controlled substances and valuable stored at the location, and used to protect persons delivering controlled substances or transporting cash.

11. Personal effects and other items of a personal, individualized nature such as clothing, wallets, purses, personal grooming equipment, identification, and other personal

items found near firearms, contraband, and other evidence to show a person's association with and control of that evidence/contraband, as well as fingerprints on the premises.

12. Documents showing travel within the past five years, including but not limited to passports, itineraries, receipts, airline and other common carrier tickets and receipts, hotel reservations and receipts, and car rental reservations and receipts.

13. Evidence of codes used in the distribution of controlled substances, including but not limited to passwords, code books, cypher or decryption keys, and similar information.

14. Correspondence, papers, records, and any other items showing employment or lack of employment.

15. Home security devices such as surveillance cameras, storage media, and any related stored images.

16. Cellular telephones and other wireless telephone devices reasonably likely to contain evidence of the listed offenses, to include communications, photographs, identification of co-conspirators, and other items listed in this Attachment.